Michael R. Lozeau (Bar No. 142893)
Email: michael@lozeaudrury.com
Kylah M. Staley (Bar No. 347756)
Email: kylah@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Phone: (510) 836-4200

Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER, a
California non-profit association,

        Plaintiff,

    v.

CITY OF CULVER CITY, a California
municipality,

        Defendant.

Case No. 2:25−cv−02119−CV (AGRx)

**[~~PROPOSED~~] CONSENT DECREE**

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant City of Culver City ("Defendant") owns and operates a facility at 9255 West Jefferson Boulevard in Culver City, California 90232, under Waste Discharger Identification number 4 19I001571 ("Facility");

**WHEREAS,** the Facility's industrial activities consist of vehicle and equipment storage; shipping and receiving; municipal solid waste, recyclables, and organics collection, processing, and transfer for recycling, composting or disposal; construction and demolition materials collection, processing, and transfer for disposal; e-waste storage and transfer for recycling; material storage, and equipment staging. The Facility is categorized under Standard Industrial Classification ("SIC") Code 4953 ("Refuse System").

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or

[PROPOSED] CONSENT DECREE

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on October 15, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

---

otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

[PROPOSED] CONSENT DECREE

**WHEREAS**, on March 10, 2025, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:25−cv−02119−CV (AGRx) ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including Ballona Creek, the Ballona Creek Estuary, and Santa Monica Bay (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of

this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    _Court Notice_. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    _Entry of Consent Decree_. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

## B.    DEFINITIONS

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

   a.    "BAT" means the Best Available Technology Economically Achievable.

   b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

   c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

   d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

   e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

   f.    "Design Storm" means the volume and flow rate of runoff produced from a design storm as defined by General Permit Section X.H.6.

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

j.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "[Blair Hills, Culver City, CA, USA]"[2].

k.    "MIP" means a Monitoring Implementation Plan.

l.    "PPT" means Pollution Prevention Team.

m.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q.    "SWPPP" means a Storm Water Pollution Prevention Plan.

r.    "Term" means the period between the Effective Date and the "Termination Date."

s.    "Termination Date" means the latest of:

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=34.0155&lon=-118.3776.

[PROPOSED] CONSENT DECREE

i.    June 30 following five (5) years from the Effective Date;

ii.    June 30 following two (2) years after the Storm Water Rerouting Project required by Paragraph 15 below is fully installed, operational, and optimized;

iii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the later of the dates in Paragraphs 11.s.i. and 11.s.ii. above; or

iv.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

t.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 30th of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with: (1) BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.    <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15.    <u>Structural BMP for the Facility</u> - Storm Water Rerouting Project.

    a.    The "Storm Water Rerouting Project" consists of installing additional underground storage, plumbing, and other features sufficient to reroute all stormwater from Drainage Area 1 and the West and East Roof discharges resulting from a Design Storm. The sizing of the new tank and associated plumbing shall be designed consistent with the design storm standards set forth in the General Permit at section X.H.6.

    b.    No later than October 1, 2025, the defendant shall complete and approve design plans for the Storm Water Rerouting Project. Defendant shall provide a copy of the design plans to LA Waterkeeper by that same date.

    c.    No later than October 1, 2026, Defendant shall complete installation and begin full operation of the Storm Water Rerouting Project.

    d.    On or about March 2, 2026, the City shall provide LA Waterkeeper a written update of the status of the Storm Water Rerouting Project, including but nnot limited to whether it is on schedule to meet the October 1, 2026 deadline, the status of any required permits, and any alterations to the design.

e.  Within seven (7) days of the installation of the Storm Water Rerouting Project, Defendant shall confirm to LA Waterkeeper in writing certified by the responsible engineer, with photographs, that installation of the Storm Water Rerouting Project has been completed and that the system is fully operational.

16.  Non-Structural BMPs for the Facility.  Unless otherwise noted, Defendant shall immediately implement the following BMPs at the Facility:

a.  Maintain the four discharge boxes containing ABTech "Smart Sponges" and Biochar media;

i.  Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all discharge boxes and their media and filters;

ii.  As necessary, replace any degraded filters or media;

b.  Within twenty-four (24) hours prior to a Forecasted Rain Event, deploy ABTech socks, or substantially similar devices, along the inside of the wall on the south side of Drainage Area 1 at the two locations where stormwater flows under the wall to the ABTech filter boxes.

i.  These socks shall include media capable of reducing iron and bacteria in the storm water discharges;

ii.  During each Wet Season, as necessary, replace the socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the socks are not sufficiently reducing pollutant concentrations;

c.  Perform monthly pressure washing of the main entrance driveway and adjacent street where trucks exit near the West Roof exit. All

9

[PROPOSED] CONSENT DECREE

1    wash water from the pressure washing should be collected and

2    disposed of as wastewater;

3    d.    Implement a daily sweeping program using a 2016 Tennant T17,

4    or substantially similar battery-powered sweeper on all paved

5    areas and within twenty-four (24) hours prior to a Forecasted Rain

6    Event, and employ hand sweeping and/or vacuuming on the same

7    schedule in areas a mechanical sweeper cannot access;

8    e.    Within seven (7) days of each of the above BMPs being initially

9    implemented, Defendant shall confirm to LA Waterkeeper in

10    writing, with photographs, that such BMP has been implemented

11    as set forth above.

12    **B.    SAMPLING AT THE FACILITY**

13    17.    Defendant shall develop a monitoring program consistent with the

14    General Permit. During the Term, Defendant shall collect samples of storm water

15    discharge from each Discharge Point which produces a discharge during a Qualifying

16    Storm Event. Such sampling shall take place as soon as possible within the four (4)

17    hour period required by the General Permit § XI.B.5. If Defendant would have been

18    required to collect samples during a rain event pursuant to this Consent Decree had

19    such rain event produced a discharge, but Defendant did not collect samples because

20    such rain event did not produce a discharge, then Defendant shall document the

21    inability to sample by taking photographs during the rain event of each Discharge

22    Point from which no discharge occurred. Defendant shall submit such photographs to

23    LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain

24    event, within five (5) days of a written request for such records by LA Waterkeeper.

25    18.    Sampling Parameters. All samples collected pursuant to this Consent

26    Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

27    Defendant's obligation to conduct sampling for any parameters that are listed in 40

28    C.F.R. § 131.38 and/or in the General Permit be changed for any reason, including

without limitation as a result of changed operations, a revised pollutant source assessment, or a new or revised mandate from a regulatory agency, such parameters shall be incorporated into Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to change sampling for any such parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

19.    <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

20.    <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

21.    <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) days of receiving the laboratory report with the results.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

22.    <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Zinc (Zn) | 0.10477 mg/L | NEL |
| Copper (Cu) | 0.0137 mg/L | NEL |
| Magnesium (Mg) | 0.064 mg/L (annual) | NAL |
| Iron (Fe) | 1 mg/L (annual) | NAL |
| pH | 6-9 SU (instantaneous) | Basin Plan |
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |

23.  <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: (1) For NEL Limits, where the concentration of any pollutant in any storm water sample from the Facility exceeds the applicable numeric limit contained in Table 1; (2) for Annual limits, when two (2) or more analytical results from samples taken for any single parameter within a reporting year exceeds the applicable annual value in Table 1[4]; or one (1) or more analytical results from samples taken for any single parameter within a Reporting Year exceeds the applicable instantaneous value in Table 1. An Exceedance shall constitute a violation of this Consent Decree but shall not incur penalties or consequences beyond the obligation to consider such Exceedances in an Action Plan.

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree or whether the parameter may be removed from the Table.

[4] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 0.26 mg/L standard for zinc on December 28, 2025; (ii) samples from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2025 and on March 15, 2026; or (iii) a sample from Sample Point 1 exceeding the 0.26 mg/L standard for zinc on December 28, 2025, and a sample from Sample Point 2 exceeding the 0.26 mg/L standard for zinc on March 15, 2026."

24.    <u>Action Plan</u>. As of the Effective Date, and through the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) Defendant receives a laboratory report for storm water samples that demonstrates an Exceedance as defined above, or (c) the Storm Water Rerouting Project discharges untreated storm water in smaller than a Design Storm (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper no later than June 15, 2025 for the 2024/2025 Rainy Season. For the 2025/2026 Rainy Season, a single Action Plan for all Trigger events occurring from October 1 through January 1 shall be submitted to LA Waterkeeper no later than January 15, 2026.

a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge and/or the applicable discharge from less than a Design Storm; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition and/or Design Storm Standard, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7)

13

days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.  Action Plan Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.  Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.  Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.  Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.  Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.  Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving

LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.     Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 29 below.

e.     <u>Action Plan Payments</u>. Defendant shall pay Three Thousand Dollars ($3,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.     VISUAL OBSERVATIONS**

25.     <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

26.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

27.    <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs, to document compliance with Paragraphs 25 and 26. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

E.    TRAINING AND PLANS

28.    <u>Employee Training Program</u>. Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that

meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

      a.    <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

      b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

      c.    <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

      d.    <u>Sampling Training</u>. Defendant shall designate an adequate number of employees or agents necessary to collect storm water samples as required by this Consent Decree, including training to ensure

samples are properly collected, stored, and submitted to a certified laboratory;

e.  Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.  Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.  Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.  Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

29.  SWPPP Revisions.

a.  Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment as to the portions of the SWPPP which are required to conform to this Consent Decree.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

    i.     A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

    ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

    iii.   Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv.   A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

    v.    A MIP as required by Sections XI and X.I of the General Permit;

    vi.   A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    vii.   A Training Program as described above in Paragraph 28.

  b.    <u>Additional SWPPP Revisions</u>.

    i.     Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute

19

Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment as to the portions of the SWPPP which are required to conform to this Consent Decree.

    ii. Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

  c. <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 29.a and 29.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following

[PROPOSED] CONSENT DECREE

its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

**F.    COMPLIANCE MONITORING AND REPORTING**

30.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. The Parties may agree to conduct the Site Inspection virtually. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.    <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 58, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within three (3) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 58, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

32.    <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Three Thousand Dollars ($3,000.00) within thirty (30) days of the Entry Date.  In the event that, pursuant to Paragraph 30, there is an additional in-person Site Inspection in a given year to resolve a dispute, Defendant shall reimburse LA Waterkeeper an additional Three Thousand Dollars ($3,000.00) during such year, within thirty (30) days after any additional in-person Site Inspection.  In the event that, pursuant to Paragraph 30, any additional Site Inspection is conducted virtually, Defendant shall reimburse LA Waterkeeper an additional Two Thousand Dollars ($2,000.00) during such year, within thirty (30) days after any additional virtual Site Inspection. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street,

Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### G. ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

33. <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in Ballona Creek, the Ballona Creek Estuary, and Santa Monica Bay. Defendant shall make a payment totaling Thirty Thousand Dollars ($30,000.00) to Ballona Creek Renaissance made within thirty (30) days of the Entry Date, payable to Ballona Creek Renaissance and sent via overnight mail to Ballona Creek Renaissance, PO Box 843, Culver City, CA 90232. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34. <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Sixty Thousand Dollars ($60,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Lozeau Drury LLP and delivered by overnight carrier to Michael R. Lozeau, Lozeau Drury LLP, 1939 Harrison St., Suite 150, Oakland, California, 94612. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35. <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Ballona Creek Renaissance, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Ballona Creek Renaissance, PO Box 843, Culver City, CA

90232. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.    <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Ballona Creek Renaissance, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Ballona Creek Renaissance PO Box 843, Culver City, CA 90232.

## IV.    DISPUTE RESOLUTION

37.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to

the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability,

nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.     Specific Brand Name References. Where specific brands or products are identified in this agreement, if the specific item is unavailable or it is impractical to obtain the specific item within the time frame necessary to utilize it for its intended purpose, Defendant may substitute a substantially similar product with notice provided in writing to Plaintiff.

48.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

49.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

50. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

52. <u>Diligence</u>. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53. <u>Effect of Consent Decree</u>. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

55. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

57. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree

[PROPOSED] CONSENT DECREE

when performance becomes impossible due to a Force Majeure event. A Force

Majeure event is any circumstance beyond a Settling Party's control, including

without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic,

public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

sabotage, or terrorism; restraint by court order or public authority or agency; or action

or non-action by, or inability to obtain the necessary authorizations or approvals from

any governmental agency. In the case of governmental permits and approvals

required for structural BMPs, Defendants shall diligently file and pursue all required

local agency applications for permits for the structural BMPs described in this

Consent Decree, and shall diligently pursue the procurement of contractors, labor and

materials to complete all such BMPs by the deadlines set forth herein, and shall use

their best efforts to meet these deadlines. Defendants may be excused from meeting

the deadlines in this Consent Decree for a specific BMP if circumstances beyond the

reasonable control of Defendant as well as delays in obtaining any required

governmental permits or approvals due to the permitting agency's actions or inactions

or delays associated with the fabrication and/or construction of materials and

structural BMPs prevent the attainment of the deadline for a specific BMP. Such

delays may only be excused if all of the following requirements are met: 1)

Defendants have notified LA Waterkeeper via email and first class mail within ten

(10) days of first learning about the anticipated delay; 2) Defendants continue to

exercise due diligence and best efforts in pursuing the permitting and implementation

of the BMP in question and proposes a reasonable revised deadline; and 3)

Defendants meet the revised deadline. Any excused delay shall not excuse

Defendants from implementing their other, unexcused obligations under this Consent

Decree. A Force Majeure event shall not include normal inclement weather,

economic hardship, inability to pay, or employee negligence. Any Party seeking to

rely upon this Paragraph to excuse or postpone performance shall have the burden of

establishing that it could not reasonably have been expected to avoid the Force

[PROPOSED] CONSENT DECREE

Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

58. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Defendant</u>: |
|---|---|
| Los Angeles Waterkeeper | Yanni Demitri |
| Benjamin Harris | Sean Singletary |
| Erina Kwon | Culver City |
| Madeleine Siegel | 9770 Culver Boulevard |
| 360 E 2nd St., Suite 250 | Culver City, CA  90230-0507 |
| Los Angeles, CA 90012 | E-mail: yanni.demitri@culvercity.org |
| Email: ben@lawaterkeeper.org | E-Mail: sean.singletary@culvercity.org |
| Email: erina@lawaterkeeper.org | Phone: 310-253-6457 |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |

| <u>With copies to</u>: | <u>With copies to</u>: |
|---|---|
| Michael R. Lozeau | Heather Baker |
| Rebecca L. Davis | Michael Cobden |
| LOZEAU DRURY LLP | Deputy City Attorney |
| 1939 Harrison St., Suite 150 | City of Culver City |
| Oakland, CA 94612 | 9770 Culver Boulevard |
| Tel: (510) 836-4200 | Culver City, CA  90230-0507 |
| E-mail: michael@lozeaudrury.com | E-mail: michael.cobden@culvercity.org |
| E-mail: rebecca@lozeaudrury.com | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59.     If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____March 14_____, 2025          By: _____

Bruce Reznik
Executive Director
Los Angeles Waterkeeper

Dated: _____March 14_____, 2025          By: _____

John Nachbar
City Manager

[PROPOSED] CONSENT DECREE

APPROVED AS TO FORM

LOZEAU DRURY LLP

Dated: _3/17_ , 2025          By: _____
                                   Michael R. Lozeau
                                   Attorney for Plaintiff
                                   Los Angeles Waterkeeper

                              CULVER CITY ATTORNEY

Dated: March 3, 2025          By: _____
                                   Michael Cobden
                                   Attorney for Defendant
                                   Culver City

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: _5/22/25_              CENTRAL DISTRICT OF CALIFORNIA

                              _____
                              HONORABLE CYNTHIA VALENZUELA
                              United States District Court Judge

[PROPOSED] CONSENT DECREE